```
LAW OFFICE OF CLIFFORD A. DOVER SBN 169838
1634 Fern Street
San Diego, CA 92102
cliffdover@aol.com
(619) 677-2967
facsimile (615) 694-2967

Attorney for Plaintiffs
```

FILED
08 JAN -4 PM 3:18
CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

CALIFORNIA SOUTHERN JUDICIAL DISTRICT

| | |
|---|---|
| PEDRO RAMOS, CATALINA B. RAMOS, as an individual and as Guardian Ad Litem for K.R., minor, THE FAIR HOUSING COUNCIL OF SAN DIEGO, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> FRITZ NEWMAN dba EL CAMINO 76 MOBILE ESTATES, G.N. SELLERS, III, dba N.A.P. CONSULTING INC., ADELE TEAL, <br><br> Defendants. | Case No. '08 CV 0026 JM JMA <br><br> COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF; <br><br> DEMAND FOR TRIAL BY JURY |

## I. INTRODUCTION

1. This action seeks monetary, declaratory and injunctive relief, alleging that defendants engaged in a pattern and practice of housing discrimination on the basis of disability in violation of the federal Fair Housing Amendments Act of 1988 ("FHAA"), 42. U.S.C.

§3601 *et seq.*, the California Fair Employment and Housing Act ("FEHA"), Government Code Sections 12900 *et seq.*, which prohibits housing discrimination based on disability; the California Unruh Civil Rights Act, Civil Code Sections 51 *et seq.*; the California Disabilities Act, California Civil Code section 54.1 *et seq.*, the California Unfair Business Practices Statute, Business and Professions Code Sections 17200 *et seq.*; and for negligence.

## II. JURISDICTION AND VENUE

2. Jurisdiction is conferred upon this Court pursuant to California Govt Code section 12989.1, and 42 U.S.C. section 3613 regarding the federal law claim.

3. Venue is proper in that the claims alleged herein arose within San Diego County, California.

## III. PARTIES

4. Plaintiffs PEDRO RAMOS, CATALINA B. RAMOS ("the RAMOS plaintiffs") are the owners of mobile home #57 in the El Camino 76 Mobile Estates, which is located at 220 North El Camino Real, in Oceanside, California ("the Park"). They are the parents of plaintiff K.R., a minor, who was born in 1998.

5. Plaintiff K.R. suffers from autism, and is "handicapped" or "disabled" within the meaning of section 802 of the Fair Housing Act, 42 U.S.C. section 3602(h), and California Gov't Code section 12955.3, as defined in Gov't Code section 12926(i).

6. Plaintiff FAIR HOUSING COUNCIL OF SAN DIEGO COUNTY, INC., (hereinafter "FAIR HOUSING") is a non-profit corporation operating under the laws of the State of California, with its principal place

of business located at 625 Broadway, Suite 1114, San Diego, California. One of its specific purposes and goals is the promotion of equal opportunity in the renting, purchasing and financing of housing and the elimination of all forms of illegal housing discrimination. To this end, the activities in which plaintiff FAIR HOUSING engages include, but are not limited to: (1) investigating allegations of discrimination; (2) conducting "tests" of housing facilities to determine whether equal opportunity in housing is provided; and (3) taking such steps as it deems necessary to assure such equal opportunity and to counteract and eliminate discriminatory housing practices.

7. Defendant FRITZ NEWMAN dba EL CAMINO 76 MOBILE ESTATES ("NEWMAN"), is or was the owner and operator of the El Camino 76 Mobile Estates, a mobile home park (the "Park") located at 220 North El Camino Real, in Oceanside, California.

8. Defendant G.N. SELLERS, III, dba N.A.P. CONSULTING INC., ("SELLERS") is or was the owner of N.A.P. Consulting Inc., the management company hired by defendant NEWMAN to manage the El Camino 76 Mobile Estates, during relevant time periods stated herein.

9. Defendant ADELE TEAL ("TEAL") is or was the on-site manager hired by defendant NEWMAN to manage the Park during relevant time periods herein.

### IV. FACTS

10. The RAMOS plaintiffs moved into a mobile home in the Park in approximately 1999. Prior to moving in, they tried for several months to obtain information regarding the sale of the property before they were able to purchase the mobile home they wanted. When

1  they first moved into the Park, defendant TEAL expressed to the
2  RAMOS plaintiffs that she had tried to obtain that mobile home as
3  well, and appeared disappointed that the RAMOS plaintiffs were able
4  to buy and she was not.  Defendant TEAL has several family members
5  who also reside in the Park.
6      11.  From approximately 2002 to the summer of 2005, the RAMOS
7  plaintiffs had a trampoline erected next to their mobile home so
8  that their disabled daughter, plaintiff K.R., could exercise on it
9  as a way of reducing stress and weight control.  The trampoline was
10 enclosed within a fenced area, was on a grassy area of the RAMOS
11 plaintiffs' mobile home lot, and had a safety enclosure to prevent
12 someone from falling out of the trampoline.  Plaintiff CATALINA
13 RAMOS used the trampoline with plaintiff K.R., and would not allow
14 other kids to use it without their parent's permission.
15     12.  In 2005, the RAMOS plaintiffs purchased an upgraded mobile
16 home to replace their older mobile home in the Park.  As a result,
17 they were required to move out of their old mobile home during the
18 home replacement period, which lasted approximately two months.
19 Prior to moving out, they asked defendant TEAL if they could rent
20 another mobile home that management had for rent in the Park at that
21 time. Defendant TEAL refused to rent the RAMOS plaintiffs a home in
22 the Park, stating that she did not feel it was right to rent out a
23 mobile home for just a few months.  Defendant TEAL also refused to
24 allow the RAMOS plaintiffs to rent an RV and park it in their space
25 while the movers were getting ready to put in their new mobile home.
26 She suggested that the RAMOS plaintiffs find an apartment somewhere
27 else to rent during the time that their home was being replaced.
28 The RAMOS plaintiffs were therefore unable to use their space during

1  the time that their new mobile home was being put in, even though
2  they were still responsible for the space rent.
3      13.  During the month of August of 2005, while the RAMOS
4  plaintiffs were living in an apartment complex across the street
5  from the Park while their new mobile home was not yet in place, they
6  noticed that the yard next to their mobile home space had been dug
7  up and cordoned off with yellow caution tape.  Plaintiff PEDRO RAMOS
8  then asked defendant TEAL, who was near the RAMOS plaintiffs' space
9  lot at the time, what was the purpose of the yellow tape, and why he
10 had not received notice of what was going on.  Defendant TEAL
11 ignored him and walked past him.  Plaintiff PEDRO RAMOS then
12 contacted an inspector from the City of Oceanside, who came out to
13 inspect the property.  As the inspector took pictures, he was
14 approached by defendant TEAL.  He asked her why the portion of
15 plaintiffs' property was taped off, and she informed him that she
16 and the management company were re-sizing the lot.  She further
17 stated that once the tenant vacated the premises that the management
18 could do whatever they wanted with the lot, and that included re-
19 sizing it.  The inspector for the City of Oceanside then asked
20 plaintiff PEDRO RAMOS if he had stopped paying space rent while he
21 was waiting for his new mobile home, to which plaintiff PEDRO RAMOS
22 responded that he had continued to pay the space rent, and that he
23 was current on the rent.  The inspector for the City of Oceanside
24 then told defendant TEAL that plaintiffs did not vacate the property
25 because the space rent was still being paid.  Defendant TEAL
26 responded that she was just following orders from her supervisor.
27      14.  The next day, the RAMOS plaintiffs returned to their lot
28 to find that defendant TEAL had laborers pouring cement onto the

area that had been taped off. The grassy area next to the RAMOS plaintiffs' space lot was taken away. As she saw them approach her, she told the laborers to continue working no matter what happened. Plaintiff PEDRO RAMOS then asked defendant TEAL why she was cementing his yard after the City inspector told her not to, and without any notification of any kind to him or his wife. Defendant TEAL responded that she did not know, and that they had to talk to her supervisor. Plaintiff PEDRO RAMOS then contacted Hawkeye Management, the management company for the Park at that time, and spoke to "Terry," who presumably was the management company supervisor. Plaintiff PEDRO RAMOS introduced himself and told Terry what space number he was renting in the Park. She responded by saying "I know all about your fucking problem Mr. Ramos and just to let you know, we can do whatever we want with your lot," or words to that effect. Plaintiff PEDRO RAMOS then asked why he was not given notice concerning the re-sizing of his lot and pouring concrete on his property. Terry responded by saying "Are you not listening to me?, I said that we could do whatever the fuck we please," or words to that effect. Plaintiff PEDRO RAMOS then asked Terry if he could speak to the owner of the management company regarding this issue, and she responded by saying "No, the owner doesn't have the time for this fucking matter and neither do I," and then she hung up the phone on him. Plaintiff PEDRO RAMOS then asked defendant TEAL for the phone number of the owner of Hawkeye Management. Defendant TEAL told him that he had to get that information from her supervisor Terry.

15. When the time came to move into their new mobile home, defendant TEAL refused to provide the RAMOS plaintiffs with a new

1  lease, in the attempt to prevent them from moving back into their
2  new mobile home.  She told them that they had to speak to her
3  supervisor about it.  The RAMOS plaintiffs' realtor then told
4  defendant TEAL that the RAMOS plaintiffs had the right to move into
5  their new mobile home under the previous lease.  The RAMOS
6  plaintiffs were only then able to move into the new mobile home with
7  their family.
8      16. The City of Oceanside, via an Inspection Report dated
9  September 19, 2005, informed defendant NEWMAN that he needed to
10 revise the Plot Plan for the RAMOS plaintiffs' mobile home rental
11 space back to the original dimensions that were in place before they
12 put their new home in.  However, this never occurred.
13     17.  In or around March 2007, defendant TEAL placed a notice in
14 the RAMOS plaintiffs' mailbox which stated that the new Park
15 management would be N.A.P. Management.  The notice included a date
16 and time that residents of the Park could meet with the new
17 management.  On the day of the meeting, plaintiff PEDRO RAMOS
18 noticed that the majority of residents were family members of
19 defendant TEAL, who also were residing in the Park.  Plaintiff PEDRO
20 RAMOS approached defendant SELLERS, or the representative for
21 defendant SELLERS, and asked if he could make an appointment to meet
22 with them regarding the fact that his fence had been taken down,
23 that his mobile home rental space had been re-sized and the grassy
24 area next to his mobile home had been cemented over, and that he was
25 being refused the use of a trampoline for his daughter.  Plaintiff
26 PEDRO RAMOS was given a business card at that time, and was then
27 told that a N.A.P. Management person would be visiting the property
28 once a week, and that if he had any issues, he could speak to them

1  at that time.

2      18.  The next attempt to talk to defendant SELLERS while he was
3  at the Park was unsuccessful, as he told plaintiff PEDRO RAMOS that
4  he was heading home, and therefore had to wait until the next time
5  to talk to him.  Plaintiff PEDRO RAMOS told defendant SELLERS that
6  it would take only five minutes of his time.  Defendant SELLERS
7  again refused the request to talk to him.  Plaintiff PEDRO RAMOS
8  then asked defendant SELLERS when, what time, and where could they
9  meet the following week.  Defendant SELLERS responded by saying "I
10 don't really know my schedule so I can't really tell you," or words
11 to that effect.  The next time that plaintiff PEDRO RAMOS saw
12 defendant SELLERS in the Park, he again asked to meet with him.
13 Defendant SELLERS told him that he was very busy, and that he would
14 definitely meet with him the following week to go over his issues.
15 The next week came and went without a meeting.

16     19.  In April of 2007, after two weeks went by, plaintiff PEDRO
17 RAMOS saw defendants TEAL, her husband, and defendant SELLERS riding
18 by his mobile home on a golf cart.  Plaintiff PEDRO RAMOS asked
19 defendant SELLERS again if they could meet to discuss his fence and
20 other issues that he wanted to discuss.  Defendant SELLERS again
21 said that he did not have time to discuss anything, and then he
22 asked plaintiff PEDRO RAMOS if he worked, in a derisive manner.
23 Plaintiff PEDRO RAMOS told him that in fact he did work.  Defendant
24 SELLERS then asked plaintiff PEDRO RAMOS to leave him his phone
25 number, and that he would be contacted when defendant SELLERS got
26 back to his office.  At that time, plaintiff PEDRO RAMOS wrote his
27 phone number down and handed it defendant SELLERS, and walked away.

28     20.  The RAMOS plaintiffs received a letter dated April 27,

2007, from defendant N.A.P. Consulting, signed by defendant SELLERS, stating that defendant NEWMAN denied their request for a reasonable accommodation.

21.  On May 11, 2007, the RAMOS plaintiffs sent a form letter to defendants that was given to them by plaintiff FAIR HOUSING and filled out by their minor disabled daughter's physician.  This form verified that plaintiff K.R. suffered from autism and obesity and needed exercise to lower stress.

22.  On July 10, 2007, plaintiff FAIR HOUSING sent a formal letter requesting reasonable accommodation on behalf of RAMOS plaintiffs.

23.  On July 20, 2007, a meeting was held between plaintiffs PEDRO RAMOS, CATALINA RAMOS, Mary Scott Knoll, who was the Executive Director plaintiff FAIR HOUSING, Erica Jimenez and Branden Butler, both from plaintiff FAIR HOUSING, along with defendant NEWMAN, defendant G.N. SELLERS III, Patricia Huerta from defendant N.A.P. CONSULTING INC, and defendant TEAL.  At that time, defendants stated that the RAMOS plaintiffs would be allowed to re-install the trampoline on their rental space for the benefit of plaintiff K.R., provided that they installed a fence to enclose the trampoline. Based on this apparent agreement, plaintiff FAIR HOUSING drafted the terms of the agreement and sent it to the defendants for their approval and comment.  Plaintiff FAIR HOUSING did not receive a response from any defendants regarding this agreement.

24.  The RAMOS plaintiffs received a copy of a letter dated July 20, 2007, from defendant NEWMAN's insurance company, which stated that if the trampoline were to be installed, that it be fenced, and that the tenant provide proof of insurance.  This letter

contradicted the letter sent by defendant SELLERS to the RAMOS plaintiffs dated April 27, 2007, which denied them a reasonable accommodation based on perceived potential liability to the defendants.

25. Several weeks after plaintiff FAIR HOUSING sent the proposed agreement to defendants dated July 20, 2007, defendant TEAL approached the RAMOS plaintiffs and told them that defendant NEWMAN wanted to meet with them without any representatives from plaintiff FAIR HOUSING being present. Plaintiff CATALINA RAMOS told defendant TEAL that the RAMOS plaintiffs would not meet with defendants without a representative from plaintiff FAIR HOUSING representing their interests, and asked defendant TEAL why was it that defendant NEWMAN wanted to meet with them alone. Defendant TEAL told her that she did not know why. Plaintiff CATALINA RAMOS then told defendant TEAL to ask defendant NEWMAN why he wanted to meet with them without the presence of a representative from plaintiff FAIR HOUSING and get back to her. Defendant TEAL never responded to this request.

26. After being informed of defendants' attempt to meet with the RAMOS plaintiffs without them being present, and their refusal to do so, plaintiff FAIR HOUSING set up another meeting, which took place on October 12, 2007. At that time, defendant NEWMAN said that the RAMOS plaintiffs' request for a reasonable accommodation was not reasonable, because if the RAMOS plaintiffs were allowed to put back the trampoline, that defendants would have to let everyone else do it as well. Defendant NEWMAN also denied that plaintiff K.R. even needed the trampoline, and that plaintiff K.R. only thought she needed it. Defendant NEWMAN also said that if a fence were put back up, that the San Diego Gas & Electric Company meter reader would

have difficulty reading the meter on the property. As a result of this allegation, an investigator with plaintiff FAIR HOUSING was able to determine that there were other homes in the Park that had fences with electric meters in the same location as the RAMOS plaintiffs' meter, where meter reader access was not impeded in any manner.

27. During the time and as a result of not having the trampoline, plaintiff CATALINA RAMOS had to miss time off from work because plaintiff K.R. began to act out in class. The lack of having the trampoline caused stress for family. Plaintiff K.R. asked when she could have her trampoline back on an almost daily basis, not understanding why she could not have it back. The RAMOS plaintiffs were also harassed by defendants about things that other residents in the Park were not, such as enforcement of guest parking, and their dog supposedly getting loose.

28. By reason of defendants' unlawful acts and practices, the RAMOS plaintiffs have suffered humiliation, loss of civil rights, the quiet enjoyment of their home, mental anguish, bodily injury, including physical and severe emotional distress, headaches, stomach aches, loss of weight and sleep, entitling these plaintiffs to compensatory damages.

29. There now exists an actual controversy between the parties regarding defendants' duties under the federal and state fair housing laws. Accordingly, plaintiffs are entitled to declaratory relief.

30. Unless enjoined, defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law.

Accordingly, plaintiffs are entitled to injunctive relief.

31.  By reason of defendants' unlawful acts and practices, plaintiff FAIR HOUSING has suffered injury to its ability to carry out its purposes and to serve the public in its efforts to eliminate housing discrimination, to resolve fair housing disputes, to find and to make available decent housing for persons regardless of disability, and to assure rights to the important social, professional, business, economic, and political benefits of associations that arise from living in communities of one's choice. Defendants' unlawful acts and practices have caused plaintiff FAIR HOUSING to suffer economic losses in staff pay, and in the inability to undertake other efforts to end unlawful housing practices, entitling plaintiff FAIR HOUSING to compensatory damages.

32.  Defendants' discriminatory conduct as alleged herein was carried out with the intent to discriminate against the RAMOS plaintiffs and their minor daughter, and with a design to hide such discrimination.  All acts or omissions alleged to have been engaged in by defendants herein are alleged to have been engaged in with the intent to injure plaintiffs or with a willful and conscious disregard for the rights of plaintiffs, and were fraudulent, malicious, and/or oppressive, entitling plaintiffs to recover punitive damages from each defendant in an amount according to proof.

33.  In the alternative, defendants negligently failed to hire, train, and supervise and seek training for themselves, their employees and agents, regarding the requirements of state and federal fair housing laws.

///

## V. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION

**[Fair Housing Act]**

34. Plaintiffs reallege and incorporates by reference paragraphs 1 through 33 of the complaint herein.

35. Defendants have violated the Fair Housing Act in that they injured all plaintiffs by engaging in the following discriminatory housing practices:

    A. Refusing to make a reasonable accommodation to the RAMOS plaintiffs in the rules, polices, practices, or services, by failing to allow them to maintain a trampoline for the benefit of their minor disabled daughter, plaintiff K.R., where such accommodation is necessary to afford these plaintiffs full enjoyment of their home, in violation of 42 U.S.C. section 3604(f)(3)(A);

    B. Interfering, threatening, and intimidating the RAMOS plaintiffs in the exercise or enjoyment of, or on account of them having exercised or enjoyed, rights guaranteed by the Fair Housing Act, by installing the security gate at their dwelling based on plaintiff K.R.'s disability, in violation of 42 U.S.C. section 3617.

### B. SECOND CAUSE OF ACTION

**[Fair Employment and Housing Act]**

36. Plaintiffs reallege and incorporate by reference paragraphs 1 through 33 of the complaint herein.

37. Under the California Fair Employment and Housing Act

("FEHA"), pursuant to Gov't Code section 12955, it is unlawful to discriminate against or harass any person because of disability. Further, under the FEHA, pursuant to California Government Code section 12927, discrimination in housing includes harassment in connection with housing accommodations; and includes refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations are necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

38. Defendants violated the applicable provisions of the FEHA by refusing to make a reasonable accommodation to allow RAMOS plaintiffs to maintain an enclosed trampoline on their space rental next to their mobile home for the benefit of their minor disabled daughter, causing injury to plaintiffs, and by treating them in a hostile and abusive manner.

39. Defendants also violated the RAMOS plaintiffs' rights under the FEHA by coercing, threatening, intimidating, and interfering with these plaintiffs in the exercise or enjoyment of rights granted and protected by section 12955.

### C. THIRD CAUSE OF ACTION
### [Unruh Civil Rights Act]
### (The RAMOS Plaintiffs and Plaintiff K.R. against defendants NEWMAN and SELLERS only)

40. Plaintiffs reallege and incorporates by reference paragraphs 1 through 33 of the complaint herein.

41. Defendants NEWMAN and SELLERS have violated the RAMOS plaintiffs' rights to fair housing under the Unruh Civil Rights Act, California Civil Code Section 51 *et seq.* in that these defendants

discriminated against the RAMOS plaintiffs and plaintiff K.R. in the operation of the rental premises, a business establishment, because of plaintiff KR'S disability.

42. The conduct of these defendants alleged herein constitutes a denial of full and equal access to housing accommodations to the RAMOS plaintiffs and plaintiff KR within the meaning of the California Civil Code section 54.1(b).

43. Pursuant to the Unruh Civil Rights Act, the RAMOS plaintiffs and plaintiff KR are entitled to statutory damages, among other remedies, of up to three times her actual damages as determined by a trier of fact, but not less than $4,000.00 against each defendant for each discriminatory act.

### D. FOURTH CAUSE OF ACTION
### [California Disabilities Act]

44. Plaintiffs reallege and incorporate by reference paragraphs 1 through 33 of the complaint herein.

45. Defendants have violated the California Disabilities Act in that he injured plaintiffs by refusing to make reasonable accommodations in rules, policies, practices, or services, when those accommodations are be necessary to afford the RAMOS plaintiffs and plaintiff KR, an individual with a disability, equal opportunity to use and enjoy the premises, under California Civil Code §54.1(b)(3)(B).

### E. FIFTH CAUSE OF ACTION
### [Negligence]

46. Plaintiffs reallege and incorporate by reference paragraphs

1 through 33 of the complaint herein.

47. Defendants owed plaintiffs a duty to operate the Sunset Views Condominiums in a manner that was free from unlawful discrimination. Defendants negligently violated that duty by discriminating against the RAMOS plaintiffs based on plaintiff K.R.'s disability by failing to make a reasonable accommodation by allowing them to re-install a trampoline on their rental space next to their mobile home, for the benefit of plaintiff KR, a disabled individual. Defendants' violation of that duty was the result of negligence, including but not limited to their negligent failure to seek training regarding the requirements of state and federal fair housing laws.

47. As a legal result of defendants' negligent conduct, the RAMOS plaintiffs have suffered humiliation, mental anguish, severe emotional distress, and attendant bodily injuries and conditions, and other special and general damages according to proof.

### F. SIXTH CAUSE OF ACTION
### [Violation of the California Unfair Business Practices Statute]
### (Cal.Bus.& Prof.Code §17200 et seq.)

48. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 33 of the Complaint herein.

49. Defendants' acts and practices described herein constitute unfair business practices in violation of California Business and Professions Code § 17200 et seq. (the "California Unfair Business Practices Statute"). Plaintiffs bring this action for injunctive relief and restitution pursuant to the California Unfair Business Practices Statute.

///

## VI. **RELIEF**

WHEREFORE, plaintiffs pray for judgment against defendants as follows:

1. For an award of compensatory and punitive damages according to proof, but in excess of the $25,000.00 jurisdictional limit;

2. For an award of up to three times the amount of actual damages, but not less than $4,000.00 each for the RAMOS plaintiffs and plaintiff KR against each defendant pursuant to the Unruh Civil Rights Act;

3. For a declaration that defendants have violated the provisions of the applicable federal and state fair housing laws;

4. For temporary, preliminary and permanent injunctive relief against all practices complained about herein and for affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees and all persons acting in concert with or participating with them, to take affirmative action to provide equal housing opportunities to all renters;

5. For costs of suit, including reasonable attorneys' fees; and,

6. For all such other relief as the Court deems just.

Dated: January 4, 2008

CLIFFORD A. DOVER
Attorney for Plaintiffs

**VII. JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby request a jury trial.

Dated: January 4, 2008

_____
CLIFFORD A. DOVER
Attorney for Plaintiffs

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Pedro Ramos, Catalina B. Ramos, as an individual and as Guardian Ad Litem for K.R., minor, The Fair Housing Council of San Diego, Inc.

**DEFENDANTS**
Fritz Newman dba El Camino 76 Mobile Estates, G.N. Sellers III, dba N.A.P. Consulting, Inc., Adele Teal

08 JAN -4 PM 3:22
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Law Office of Clifford A. Dover
1634 Fern Street, San Diego, CA 92102  (619) 677-2967

Attorneys (If Known)

**'08 CV 0026 JM JMA**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment |  / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract |  / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  |  | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 443 Housing/ Accommodations / **Habeas Corpus:** |  |  | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  |  |
|  |  / ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition |  |  |  |
|  | ☐ 440 Other Civil Rights |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 3601 et seq.
Brief description of cause:
Violation of the Fair Housing Amendments Act based on disability

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ ATP
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE  01/04/2008
SIGNATURE OF ATTORNEY OF RECORD  _____

**FOR OFFICE USE ONLY**
RECEIPT # 146143   AMOUNT $350  1/4/08 BH   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

```
       UNITED STATES
       DISTRICT COURT
    SOUTHERN DISTRICT OF CALIFORNIA
          SAN DIEGO DIVISION

       # 146143    - BH

       January 04, 2008
           15:21:45

        Civ Fil Non-Pris
USAO #.: 08CV0026 CIVIL FILING
Judge..: JEFFREY T MILLER
Amount.:              $350.00 OC
Check#.: 418235754


       Total-> $350.00


FROM: RAMOS V. NEWMAN ET AL
      CIVIL FILING
```